**David THAI, Petitioner,**

v.

**UNITED STATES of America, Respondent,**

**Docket No. 01–3800.**

United States Court of Appeals, Second Circuit.

Submitted: Nov. 13, 2001.

Decided: Nov. 23, 2004.

Philip S. Glickman, Rochester, NY, for Petitioner.

Jo Ann M. Navickas, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney, and Peter A. Norling, Assistant United States Attorney, on the brief), Brooklyn, for Respondent.

Before: SOTOMAYOR, KATZMANN and B.D. PARKER, Circuit Judges.

PER CURIAM.

David Thai ("Thai" or "petitioner") moved for an order authorizing the district court to consider a second or successive 28 U.S.C. § 2255 motion. We reserved decision on the authorization motion and appointed counsel for Thai. We ordered briefing on whether petitioner's initial § 2255 motion, which the district court dismissed at petitioner's request, constituted a first petition so as to render subsequent § 2255 petitions "second or successive" under the Anti–Terrorism and Effective Death Penalty Act (AEDPA) of 1996. *See* 28 U.S.C. §§ 2244, 2255 (2000). We hold that Thai's initial § 2255 petition did not count as a first so as to render subsequent petitions "second or successive" under AEDPA. Accordingly, we deny as moot Thai's motion for authorization to file a successive motion under § 2255 and we transfer the § 2255 motion to the district court for consideration.

### BACKGROUND

According to evidence submitted by the government at his 1992 trial, Thai led a violent street gang known as Born To Kill ("BTK") from 1988 until his 1991 arrest. BTK, operating principally in New York City's Chinatown neighborhood, consisted almost entirely of young Vietnamese men who, led by Thai, committed robbery, ex-

tortion, and other violent crimes against Chinatown businesses and merchants. Thai oversaw BTK's operations, planned many of its crimes and collected the gang's proceeds. *See United States v. Thai*, 29 F.3d 785, 794–800 (2d Cir.1994).

Following a trial in the District Court for the Eastern District of New York (Amon, J.), a jury convicted Thai, along with several of his fellow gang members, of a host of crimes involving murder, assault, robbery, extortion and racketeering. *See id.* at 794. The district court sentenced Thai principally to two concurrent terms of life imprisonment, plus one term of twenty years, two terms of ten years, and one term of three years, all to be served concurrently with the life sentences. On appeal, this Court reversed Thai's conviction for conspiracy to assault but affirmed all of the other convictions. *See id.*

Thai subsequently sought to challenge his sentence under 28 U.S.C. § 2255 on the grounds of ineffective assistance of counsel and the unconstitutionality of the racketeering statute under which he had been convicted. Section 2255 provides that a prisoner sentenced by a federal court may move to have that sentence vacated, set aside or corrected if he or she claims that the court, in sentencing him or her, violated the Constitution or the laws of the United States, improperly exercised jurisdiction, or sentenced him or her beyond the maximum time authorized by law. *See Adams v. United States*, 372 F.3d 132, 135 (2d Cir.2004). Thai had until April 24, 1997 to file a § 2255 petition. *See* 28 U.S.C. § 2255; *Ross v. Artuz*, 150 F.3d 97, 102–03 (2d Cir.1998) (holding that prisoners whose convictions became final before the effective date of AEDPA, April 24, 1996, were entitled to a one-year grace period after that date within which to file their habeas or § 2255 petitions).

On February 28, 1997, Thai filed a motion for an extension of time to file his petition, which the district court denied on March 24, 1997. Thai claims to have nevertheless mailed a timely § 2255 motion to the district court "on or about April 22, 1997." Though the parties dispute whether the mailing ever occurred, resolution of that issue is not necessary for this appeal.[1]

In November 1999, Thai filed—and the district court received—a § 2255 petition raising all of the claims that he professes also to have made in the 1997 petition. The government filed a detailed response memorandum in April 2000 arguing that Thai's petition was both untimely and without merit. The memorandum disputed Thai's claims that he had been denied effective counsel, arguing that (1) he had not been denied the opportunity to testify, and (2) he was not prejudiced by his failure to testify.

One month later, Thai submitted a motion to withdraw his § 2255 motion without prejudice. In response, the government requested that the court direct Thai to furnish an explanation for his request, which Judge Amon did on June 8, 2000. The court gave petitioner two months to reply. Thai subsequently explained, in a written statement submitted on June 19, that he had filed his initial § 2255 motion with the assistance of a fellow inmate who was a "nefarious litigation butcher, who often preyed upon the weak, the unexpected [sic], the naive, the illiterate and the foreign inmates, promising to champion their cause." Thai acknowledged that his pleadings contained "various deficiencies borderline on frivolous [sic]." In light of his "honest endeavors not to unduly bur-

---

**1.** Once the district court granted petitioner's motion to withdraw voluntarily the initial petition, it rendered irrelevant the question of whether that petition had been timely filed.

den this Court with pleadings consisting of un-sound legal arguments," he sought the court's "compassion [in] allowing him to voluntarily dismiss without prejudice."

The district court issued an order agreeing to deem the petition withdrawn unless the court heard differently from Thai by July 6, 2000. The court advised petitioner, however, that any future petition for relief would probably face legal obstacles. Under the gatekeeping provisions put in place by AEDPA, a panel of the appropriate court of appeals must certify any "second or successive" motion filed pursuant to § 2255 to ensure that the motion contains either (1) newly discovered evidence, or (2) a new rule of constitutional law that is retroactive to cases on collateral review. *See* 28 U.S.C. §§ 2244(b)(3), 2254, 2255 (2000). Judge Amon warned petitioner that these restrictions would likely apply to any future § 2255 petition that he submitted: "In light of Thai's apparent concessions . . . that his initial petition was meritless," the court "would have to conclude that it is likely that any future petition would constitute a second petition subject to [AEDPA's] restrictions." The court found it "likely" that a future petition would be "barred as untimely and as a successive petition." Judge Amon refrained from definitively resolving that issue, however, as there was no successive petition yet before the court. She also declined to classify her decision permitting withdrawal as with or without prejudice, believing that a decision either way would prematurely determine the fate of future filings. Hearing nothing from Thai for several weeks, the court deemed his petition withdrawn on July 25, 2000.

This brings us to the most recent § 2255 motion filed by Thai, who again challenges the constitutionality of his sentence. Aware of AEDPA's gatekeeping provisions, Thai moved before this Court for an order authorizing a second or successive motion. We responded with an order reserving decision on the authorization motion and directing that Thai be appointed counsel. We specifically directed counsel to submit briefs addressing "whether the petitioner's first § 2255 motion, which was dismissed by the district court at the petitioner's request, constitute[d] a decision on the merits for second or successive purposes under [AEDPA]."[2]

## DISCUSSION

 While AEDPA imposes gatekeeping restrictions on "second or successive" motions, it does not define what constitutes a "second or successive" motion. Courts have uniformly rejected a literal reading of the phrase. *See, e.g., Vasquez v. Parrott,* 318 F.3d 387, 389–390 (2d Cir. 2003); *James v. Walsh,* 308 F.3d 162, 167 (2d Cir.2002); *United States v. Barrett,* 178 F.3d 34, 43 (1st Cir.1999); *In re Cain,* 137 F.3d 234, 235–36 (5th Cir.1998) (per curiam). For a petition to be second or successive, "it must at a minimum be filed subsequent to the conclusion of a proceeding that 'counts' as the first." *Ching v. United States,* 298 F.3d 174, 177 (2d Cir. 2002) (citation and internal quotation marks omitted). This Court has often stated that an initial petition will "count" where it has been adjudicated on the merits or dismissed with prejudice. *See, e.g., Littlejohn v. Artuz,* 271 F.3d 360, 363 (2d Cir.2001); *Corrao v. United States,* 152 F.3d 188, 191 (2d Cir.1998); *see also John-*

**2.** Rather than respond immediately to our request, Thai's newly appointed counsel first filed a motion pursuant to Fed.R.Civ.P. 60(b)(6) seeking to vacate the district court's

dismissal of Thai's original § 2255 petition in light of the court's failure to appoint counsel to assist Thai. We denied that motion on June 18, 2002.

son v. U.S., 196 F.3d 802, 805 (7th Cir. 1999), quoted in Littlejohn, 271 F.3d at 363. Similarly, when the district court has denied a prior petition because the claim raised was procedurally defaulted, the denial is on the merits, at least for purposes of §§ 2244 and 2255. Graham v. Costello, 299 F.3d 129, 132–33 (2d Cir.2002). In contrast, an initial petition that is dismissed without prejudice because it contains curable procedural defects or because it presents unexhausted claims is not a first petition for purposes of §§ 2244 and 2255. See id. To hold otherwise would risk depriving habeas petitioners, often on the basis of a technicality, the "one full opportunity" for meaningful collateral review that Congress guaranteed to them in AEDPA. Ching, 298 F.3d at 177 (citing Littlejohn, 271 F.3d at 363).

Thai's case presents a question of first impression in this Circuit: when a habeas petitioner voluntarily moves to withdraw a § 2255 petition and the district court grants the motion, under what circumstances should a later petition be considered successive for purposes of § 2255's gatekeeping requirements?

 Drawing on the principles discussed above, we conclude that the reasons for which a petitioner withdraws a § 2255 petition should govern the analysis of whether that petition counts for successive purposes, at least where the reasons for withdrawal are reasonably discernible. When the grounds of the prior dismissal are beyond dispute, it should make little difference under § 2255 whether the district court dismissed the motion on its own initiative or upon request of a petitioner. Thus, where a petitioner moves to withdraw a § 2255 petition due to curable procedural defects, or upon realizing that his or her claims are not yet exhausted, the voluntary dismissal is akin to a dismissal without prejudice, and the initial petition

should not count for successive purposes. Cf. Graham, 299 F.3d at 133 ("When a petition is dismissed because it is procedurally defective or because it presents unexhausted claims, we do not consider it to have been denied 'on the merits' . . . ."). In contrast, if a petitioner clearly concedes upon withdrawal of a § 2255 petition that the petition lacks merit, the withdrawal is akin to a dismissal on the merits and subsequent petitions will count as successive under AEDPA. To allow withdrawal without prejudice in such circumstances would permit petitioners "to thwart the limitations on the filing of second or successive motions by withdrawing [their] first petition as soon as it [became] evident that the district court [was] going to dismiss it on the merits." Felder v. McVicar, 113 F.3d 696, 698 (7th Cir.1997).

This approach does not require difficult inquiries into the subjective intent of the petitioner. It simply requires a determination of whether the circumstances surrounding withdrawal clearly and objectively indicate that the petitioner knows his or her motion is meritless. The Seventh Circuit, for example, found that such circumstances existed where a petitioner who was competently assisted by counsel moved to withdraw only after the government had filed a detailed opposition brief arguing that the motion lacked merit. Potts v. United States, 210 F.3d 770, 770–71 (7th Cir.2000) ("[Petitioner] appears to have realized . . . that in light of the government's brief in opposition, the motion was doomed. . . . He had his opportunity to receive a decision on the merits; he flinched, seeing the handwriting on the wall."). In Felder, the same court found that an initial petition counted for successive purposes where the petitioner, assisted by counsel, had conceded upon withdrawal that he would be unable to meet his burden of proof at an evidentiary hearing.

113 F.3d at 698. In contrast, the Seventh Circuit found in *Garrett v. United States* that a prior motion did not count where the petitioner had unilaterally withdrawn it before the motion was ripe for decision and before petitioner had been apprised of the government's position. 178 F.3d 940, 943 (7th Cir.1999); *see also Haro–Arteaga v. United States,* 199 F.3d 1195, 1197 (10th Cir.1999) (per curiam) (finding that prior motions did not count under AEDPA where "none of the earlier motions . . . conceded any claim or were decided on the merits or after the district court engaged in substantive review").

■ The circumstances of the instant case do not provide a clear indication that Thai regarded his initial petition as meritless when he moved to withdraw it. Accordingly, we hold that the most recent petition is not a second or successive petition under AEDPA.

At first glance, some of the circumstances surrounding the withdrawal might seem to suggest that Thai knew his initial petition lacked merit. For example, Thai moved for dismissal of the initial petition one month after the government had filed a detailed letter in opposition to his petition, and when the district court asked Thai to furnish an explanation for the motion to withdraw, he conceded that his pleadings contained serious deficiencies. We note, however, that petitioner has poor English skills and was acting *pro se* at the time of withdrawal. *Pro se* litigants may not fully recognize the consequences of their motions, and courts must be careful not to deny them a meaningful opportunity to apply for § 2255 relief. *See Castro v. United States,* 540 U.S. 375, 124 S.Ct. 786, 792, 157 L.Ed.2d 778 (2003) (holding that, before a district court recharacterizes a *pro se* litigant's motion as a first § 2255 motion, the court must warn the litigant of the consequences of that recharacteriza-

tion and provide him or her an opportunity to withdraw or amend the motion); *see also Simon v. United States,* 359 F.3d 139, 139 (2d Cir.2004) ("[D]istrict courts may not *sua sponte* convert post-conviction motions, putatively brought under some other provision, into motions pursuant to 28 U.S.C. § 2255 without first giving the petitioner notice and an opportunity to decline the conversion or withdraw the motion."). The fact that Thai withdrew his motion after the government had filed a response might have weighed against him had he been assisted by counsel because it would have suggested that Thai knew his petition was "doomed." *See Potts,* 210 F.3d at 771. Given, however, that Thai did not have the assistance of counsel—or even a mastery of the English language—we cannot infer from the timing of his withdrawal that he had drawn any particular conclusion about the ultimate viability of his claims based on the government's response.

Moreover, while Thai did acknowledge upon withdrawal that there were significant problems with his initial petition, his statements, when taken in context, do not unambiguously indicate that he viewed his petition as completely lacking in merit. He stated that his pleadings contained "unsound legal arguments" and "various deficiencies borderline on frivolous [sic]," but he also explained that he lacked "general command of the English language" and that his petition had been filed with the assistance of a mal-intentioned inmate with limited knowledge of the law. Again taking into account Thai's *pro se* status and poor English skills, we find that Thai's statements are akin to the petitioner's concession in *Garrett* that his first petition was the " 'artless' effort of a layperson without legal training," 178 F.3d at 941, which the Seventh Circuit concluded did not count for purposes of AEDPA. *Id.* at 943.

Our conclusion is consistent with the district court's disposition of the initial petition. Judge Amon cautioned Thai that it was "likely that any future petition would constitute a second petition subject to [AEDPA's] restrictions," but she also made clear that her dismissal did not definitively resolve that issue. Indeed, Judge Amon expressly refused to rule on whether the dismissal was with or without prejudice. Federal Rule of Civil Procedure 41(a)(2) provides that where it is unclear whether the district court has dismissed an action with or without prejudice, the dismissal is without prejudice. Though we are not required to apply the Federal Rules of Civil Procedure to § 2255 cases, *see* Fed. R. Governing § 2255 Proceedings 12, we find it appropriate to apply Fed R. Civ. P. 41(a)(2) here. The Rule's cautionary approach helps ensure that *pro se* litigants have adequate warning of the consequences of their actions, *see Castro*, 124 S.Ct. at 792, and that they are not denied their "one full opportunity" for § 2255 relief. *Ching*, 298 F.3d at 177 (citing *Littlejohn*, 271 F.3d at 363).[3]

## CONCLUSION

Because we find that Thai's present petition is not a second or successive petition, we deny his application as moot and transfer the motion to the district court for consideration. We further deny as moot Thai's motion for leave to file a supplemental brief regarding *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d

---

**3.** While we appreciate Judge Amon's cautious and solicitous approach to Thai's case, we believe that it is generally more useful for a district court to specify whether a dismissal is with or without prejudice. In the case of a *pro se* petitioner such as Thai, a district court may wish to explain the negative consequences of a dismissal for lack of merit and grant the petitioner a reasonable amount of time to amend his or her § 2255 motion. *Cf.*

403 (2004), or alternatively to direct counsel to explore the applicability of *Blakely*.

*Ching*, 298 F.3d at 177 ("AEDPA ensures every prisoner one full opportunity to seek collateral review. Part of that opportunity—part of every civil case—is an entitlement to add or drop issues while the litigation proceeds." (citation and internal quotation marks omitted)).