# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 08-70044

ROBERT MORENO RAMOS,

United States Court of Appeals
Fifth Circuit

**FILED**

June 30, 2016

Lyle W. Cayce
Clerk

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 7:07-CV-59

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Robert Moreno Ramos seeks a certificate of appealability ("COA") to challenge the district court's denial of his second federal petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Ramos argues that the district court erred in refusing to grant him leave to amend his habeas corpus petition and in denying his claim related to the Vienna Convention on Consular

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-70044

Relations ("VCCR").  Because jurists of reason would not find the district court's decisions debatable or wrong, we deny a COA.

## I.

In 1993, Ramos was convicted and sentenced to death in Texas state court for the capital murder of his wife and two young children.  We discussed the underlying facts of his crime in an earlier opinion and need not repeat them here.  *See Ramos v. Cockrell*, 32 F. App'x 126, at *1-2 (5th Cir. Feb. 14, 2002) (unpublished).  Ramos's conviction and sentence were affirmed on direct appeal and he was denied state habeas corpus relief.  *Id.* at *2.  Ramos filed his first federal habeas corpus petition under 28 U.S.C. § 2254 in 1999.  *Ramos*, 32 F. App'x 126, at *2.  The district court granted summary judgment in favor of the state, we denied a COA, and the Supreme Court denied certiorari.  *Id.* at *8; *Ramos v. Cockrell*, 537 U.S. 908 (2002).

Approximately a year and a half after the Supreme Court denied Ramos's request for a writ of certiorari, the International Court of Justice ("ICJ") handed down its decision in *Avena and Other Mexican Nationals (Mexico v. United States)*, 2004 I.C.J. 12 (Mar. 31).  *Avena* was a suit brought by Mexico against the United States, alleging that the United States had violated the VCCR in denying consular notification to 54 Mexican nationals, including Ramos, on death row.  *Id.* at 20, 24-25.  Article 36 of the VCCR guarantees that a consular officer of a signatory state shall have the right to meet with and arrange legal representation for one of its citizens who is in the custody of another signatory state and that the detaining state "shall inform the person concerned without delay of his rights" under the relevant sub-paragraph.  VIENNA CONVENTION ON CONSULAR RELATIONS & OPTIONAL PROTOCOL ON DISPUTES, art. 36, para. (1)(b)&(c), 21 U.S.T. 77; *see also Cardenas v. Dretke*, 405 F.3d 244, 251-52 (5th Cir. 2005) (describing *Avena* decision).  In *Avena*, the ICJ held that, as to 51 of the individuals, the United

No. 08-70044

States had violated the VCCR by failing "to notify the Mexican consular post of the detention of the Mexican nationals [including Ramos]" and "the United States also violated the obligation . . . to enable Mexican consular officers to communicate with and have access to their nationals," thereby violating its obligation "to enable Mexican consular officers to arrange for legal representation of their nationals." *Avena*, 2004 I.C.J. at 54. The ICJ concluded that the individuals affected, including Ramos, were entitled to "review and reconsideration" of their sentences and convictions in light of the violations of the VCCR. *Id.* at 72.

Following the ICJ's decision in *Avena*, President George W. Bush issued a memorandum (the "Bush Memorandum") on February 28, 2005, directing state courts to comply with *Avena* by affording re-review of the convictions and sentences of the affected Mexican nationals. *See Medellín v. Texas*, 552 U.S. 491, 498 (2008) (discussing Bush Memorandum). Less than a month after the Bush Memorandum issued, Ramos filed his second state habeas corpus petition, this time seeking relief under the VCCR. The Texas Court of Criminal Appeals ("TCCA") dismissed the petition as an invalid subsequent habeas application. *Ex parte Cardenas*, No. WR-35938-02, 2007 WL 678628, at *1 (Tex. Crim. App. Mar. 7, 2007).[1] The TCCA relied on its decision in *Ex parte Medellín*, 223 S.W.3d 315, 332-35 (Tex. Crim. App. 2006), *aff'd sub nom. Medellín v. Texas*, 552 U.S. 491 (2008), in which the TCCA had held that neither *Avena* nor the Bush Memorandum amounted to binding federal law and therefore that neither preempted state procedural rules. *Ex parte Cardenas*, 2007 WL 678628, at *1.

---

[1] Ramos's second state habeas corpus application was consolidated with those of five other petitioners who had also been named subjects in *Avena*. *See Ex parte Cardenas*, No. WR-35938-02, 2007 WL 678628, at *1 (Tex. Crim. App. Mar. 7, 2007); *Avena and Other Mexican Nationals (Mexico v. United States)*, 2004 I.C.J. 12, 25 (Mar. 31).

Ramos next filed a second federal habeas petition in March 2007, alleging that he had been denied his rights under the VCCR and had been prejudiced thereby. [ROA 5-66.] Ramos's petition indicated that he "raise[d] a single claim . . . namely, that he ha[d] a federal right to review and reconsideration of his conviction and sentence pursuant to" the Bush Memorandum and *Avena*. [ROA 8.] The district court stayed the case pending the Supreme Court's decision in *Medellín v. Texas*, which the Supreme Court ultimately issued in March 2008. *See Medellín v. Texas*, 552 U.S. 491 (2008). There, the high court confirmed that neither the Bush Memorandum nor *Avena* required state courts to reconsider and review the affected Mexican nationals' claims where state procedural rules otherwise prevented such review. *Id.* at 522-23, 532. The district court thereafter lifted the stay on Ramos's case and dismissed his petition as successive. [ROA 551-55, 637.] Ramos appealed. [ROA 638.] While Ramos's appeal was still pending, a panel of this court handed down its decision in *Leal Garcia v. Quarterman*, 573 F.3d 214, 224 (5th Cir. 2009), holding that a Mexican national's second-in-time habeas petition relying on *Avena* and the Bush Memorandum was not successive for purposes of 28 U.S.C. § 2244. In light of *Leal Garcia*, we granted Ramos's unopposed motion to stay proceedings in this court and permit further litigation in the district court on his *Avena*/Bush Memorandum claim. The district court next granted Ramos's unopposed motion to reopen judgment under Federal Rule of Civil Procedure 60(b). [ROA 680-83.] Ramos was now free to seek merits review of his non-successive *Avena*/Bush Memorandum claim in district court.

In June 2010, Ramos filed an amended second § 2254 petition in federal district court, alleging that his VCCR rights had been violated, that he was prejudiced by that violation, and that he was entitled to review on the merits of his claims. [ROA 688-754.] In May 2013—after briefing was complete but

before the district court had issued a decision—Ramos moved for leave to amend his habeas petition to add a claim of ineffective assistance of trial counsel ("IATC"). [ROA 2138-41.] Adopting recommendations of the magistrate judge, the district court denied Ramos's motion to amend and, separately, denied habeas relief on Ramos's *Avena*/Bush Memorandum claim. The district court denied Ramos's motion to amend as futile because it would have added new successive claims over which the district court would have lacked jurisdiction. [ROA 3311-29, 3495.] The district court denied Ramos's *Avena*/Bush Memorandum claim on the merits and denied him a COA. [ROA 3335-68, 3494.] Ramos timely requested a COA from this court.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs our consideration of Ramos's request for a COA. Under AEDPA, Ramos must obtain a COA before he can appeal the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1); *see Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Ramos is entitled to a COA only if he makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El*, 537 U.S. at 327. If a petitioner seeks a COA to challenge the district court's denial of the petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" or "that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). When the district court denies a habeas corpus petition on procedural grounds without considering the underlying constitutional claim, we will grant a COA if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

No. 08-70044

whether the district court was correct in its procedural ruling." *Id.* "Each component . . . is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." *Id.* at 485. The petitioner need not "prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus." *Miller-El*, 537 U.S. at 338. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* What is more, "any doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005).

### A.

Ramos first contends that the district court erred in denying his motion to amend his second § 2254 petition. The district court denied the motion as futile because the claim Ramos sought to add—an IATC claim—would have been successive. Ramos argues that the bar on successive habeas petitions established by 28 U.S.C. § 2244 applies to *petitions*, not *claims*. In his view, having already cleared the § 2244 hurdle with his petition raising an *Avena*/Bush Memorandum claim, he was thereafter free to add additional claims without any need to clear § 2244 anew. Ramos's interpretation of the limits on successive petitions directly contradicts the purpose of § 2244, and our case law cannot support it. Jurists of reason would not debate the district court's denial of Ramos's motion to amend his § 2254 petition.

Congress has established that a habeas petition "may be amended . . . as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. The applicable rule is Federal Rule of Civil Procedure 15(a)(2), which states that the district court "should freely give leave [to amend] when justice so

6

requires." A district court has discretion to grant or deny a motion to amend, and may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quotation marks and alterations omitted). The district court denied Ramos's motion to amend solely on the basis of futility. A proposed amendment to a habeas petition is futile if, for example, review of the new claim would be barred by the procedural requirements of AEDPA. *See Flores v. Stephens*, 794 F.3d 494, 505 (5th Cir. 2015) (denying COA where reasonable jurists could not debate futility of petitioner's request to amend because proposed new claims were procedurally defaulted). The district court concluded it would be futile to permit Ramos to amend his petition with an additional IATC claim because such a claim would be successive and therefore outside the district court's jurisdiction. *See* 28 U.S.C. § 2244(b).

AEDPA demands that a petitioner obtain authorization from a federal court of appeals before he or she can file a "second or successive" habeas petition in federal district court. *See* § 2244(b)(3); *see also Leal Garcia*, 573 F.3d at 219. Absent authorization, a district court does not have jurisdiction to consider a successive § 2254 petition. *Leal Garcia*, 573 F.3d at 219. Although AEDPA does not define the phrase "second or successive," we have held that "a later petition is successive when it: 1) raises a claim challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition; or 2) otherwise constitutes an abuse of the writ." *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998). This definition "must be considered in the context of AEDPA, the statute that it interprets," which is aimed at minimizing repeated attacks on the validity of a petitioner's conviction or sentence. *Leal Garcia*, 573 F.3d at 221-22.

7

There is no question that Ramos's § 2254 petition filed in June 2010, raising only his *Avena*/Bush Memorandum claim, challenged a state action that had not yet occurred at the time of the original petition and was therefore non-successive. *Leal Garcia v. Quarterman*, 573 F.3d at 224. It is similarly beyond debate that if Ramos were to bring a federal habeas petition raising only his IATC claim, it would be successive under § 2244. Ramos alleges that his trial attorney was ineffective both during the guilt-innocence and penalty phases of trial, due to his attorney's insufficient investigation and incomplete presentation of evidence. This alleged defect existed at the time Ramos filed his original § 2254 petition and an attempt to raise it in a new petition would be successive. *See United States v. Orozco-Ramirez*, 211 F.3d 862, 869 (5th Cir. 2000). Ramos does not argue otherwise.

Instead, Ramos maintains that once a federal habeas petition is deemed non-successive, any claim may be subsequently added by amendment, whether or not such a claim was or could have been raised in an earlier petition. Ramos essentially proposes that a habeas petitioner can create an end run around AEDPA's restriction on successive petitions by filing a § 2254 application containing a single claim that could not have been raised previously, and later amending the application to add any number of previously-available claims. By Ramos's accounting, the only obstacle to such a tactic is the modest limitation on amendments found in Federal Rule of Civil Procedure 15. Ramos's reimagining of the strictures of AEDPA is wholly unpersuasive. It runs counter to the purpose of AEDPA itself and is completely incompatible with our established precedent.

As discussed *supra*, we have consistently held that a "petition is successive when it . . . raises a *claim* challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition." *In re Cain*, 137 F.3d at 235 (emphasis added). A petition is thus successive if it contains

a claim that was available when an earlier petition was filed, viewed within the framework of AEDPA. *See id.* The parties do not contest that Ramos's IATC claim was available when he filed his first § 2254 application. Where a petitioner seeks "to add a new ground for relief" that was or could have been raised in an earlier federal habeas application, "we must treat it as a second or successive habeas petition." *Williams v. Thaler*, 602 F.3d 291, 305 (5th Cir. 2010) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)) (denying COA where petitioner moved to amend the district court's judgment based on a new claim of actual innocence). It follows that if the district court had allowed Ramos to amend his second-in-time petition to add his IATC claim, his petition would have become successive to the extent it included the IATC claim, and the district court would not have had jurisdiction to hear it.[2] *See id.*; *see also Leal Garcia,* 573 F.3d at 219.

Ramos's understanding is also entirely incompatible with the purpose of AEDPA. Congress's intent in drafting AEDPA must be considered when interpreting it. *See Williams v. Taylor*, 529 U.S. 420, 436-37 (2000). AEDPA's "design is to further the principles of comity, finality, and federalism," to "reduce piecemeal litigation," and to "streamline federal habeas proceedings." *Panetti v. Quarterman*, 551 U.S. 930, 945-46 (2007) (quotation marks and alterations omitted). Ramos's reading of AEDPA would undermine AEDPA's basic purpose; it would allow district courts to countenance claims through

---

[2] Ramos attempts to bolster his position by citing to the Supreme Court's decision in *Magwood v. Patterson*, 561 U.S. 320 (2010), but that case is not on point. There, the Court addressed whether a habeas petition was successive because it challenged a new judgment with a claim that could have been brought against an earlier judgment, and held that such an application was not successive. *Id.* at 335-36 & n.11 ("The question in this case is whether a first application challenging a new sentence in an intervening judgment is second or successive. It is not whether an application challenging the same state-court judgment must always be second or successive."). Here, Ramos's IATC claim challenges the same judgment as his first § 2254 application.

No. 08-70044

amendment to a habeas petition despite such claims being outside the courts' jurisdiction had the claims been included when the petition was first filed. Jurists of reason would not find it debatable whether the district court was correct in denying Ramos's motion to amend his petition to add an IATC claim.[3]

## B.

Ramos next argues that the district court's denial of his *Avena*/Bush Memorandum claim is debatable. Ramos's claim is that the *Avena* decision, together with the Bush Memorandum, gave him a federal right to review and reconsideration of his conviction and sentence. The Supreme Court has held, however, that "neither *Avena* nor the [Bush] Memorandum constitutes directly enforceable federal law that pre-empts state limitations on the filing of successive habeas petitions." *Medellín*, 552 U.S. at 498-99. We have applied *Medellín* to deny habeas applications functionally indistinguishable from Ramos's. *See Leal Garcia*, 573 F.3d at 224.

In *Leal Garcia*, the petitioner, like Ramos, was one of the 51 named individuals in the *Avena* decision and subsequently submitted a second-in-time § 2254 petition raising an *Avena*/Bush Memorandum claim. *Id.* at 218. We held that the petitioner's habeas application was not successive, but that "[t]he Supreme Court's decision in *Medellín v. Texas*, has deprived the *Avena* decision and the Bush [Memorandum] of whatever legal force [the petitioner] might claim they ever had." *Id.* at 224. The petitioner could not "argue that Texas was required to review his case because *Medellín v. Texas* foreclosed this contention by holding that neither the ICJ nor President Bush had authority to order the State to conduct such a review." *Id.* The same is true here—

---

[3] Because we conclude reasonable jurists would not debate the district court's holding that Ramos's proposed amendment would have rendered his petition successive, we do not consider the state's alternative arguments that Ramos's IATC claim would have been time barred and procedurally defaulted.

*Medellín* deprives Ramos's *Avena*/Bush Memorandum claim of any arguable merit. If there were any lingering doubt on this point, our recent decision in *Cardenas v. Stephens*, 820 F.3d 197, at \*1 (5th Cir. 2016), has put it to rest. There, we held that an *Avena*/Bush Memorandum claim necessarily fails under 28 U.S.C. § 2254(d)(1), because there is no Supreme Court precedent for the proposition that *Avena*, the VCCR, or the Bush Memorandum "give rise to judicially enforceable individual rights cognizable on federal habeas review under AEDPA." *Id.* at \*4. The absence of such Supreme Court precedent is fatal to Ramos's § 2254 petition. *See id.*

The decisions in *Medellín*, *Leal Garcia*, and *Cardenas* are all binding on this court and each decision creates an insurmountable barrier to Ramos's *Avena*/Bush Memorandum claim. The district court's denial of the claim would not engender debate among reasonable jurists, nor is the issue adequate to deserve encouragement to proceed further.

### III.

For the reasons described above, Ramos's application for a COA is DENIED.